# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FELIX DIAS RODRIGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | No. 2:06 CV-1963 AWT |
| | ) | |
| v. | ) | **ORDER OF DISMISSAL** |
| | ) | |
| D.K. SISTO, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## Background

Felix Dias Rodriguez ("Petitioner") is a California state prisoner

proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  Petitioner is serving a sentence of 21 years to life for his

1989 convictions for second-degree murder with use of a firearm and

possession of a firearm by a felon.  He challenges the October 2005 decision

of the Board of Prison Terms[1] ("Board") denying him parole for three years.

For the reasons discussed below, the petition is hereby denied.

### Factual and Procedural Background

**A.    Facts of the crime**

On March 17, 1987, Petitioner was riding in a car with Jose

Agredano, Debbie Cloud, and Saul Garcia near Oakland, California.  Garcia

was trying to persuade Agredano and Petitioner not to kill Oscar Custodio,

an individual who apparently owed Petitioner approximately $50,000 for a

drug deal.  While the group was riding in the car, Garcia was shot and then

removed from the car and left on the side of the road.  According to Cloud,

Garcia had pulled out a gun, there had been a struggle, and the gun went off,

hitting Garcia in the neck.  Cloud, however, later stated she had not been in

the car and had not witnessed the incident.  Allegedly, Agredano and

Petitioner persuaded Cloud to provide them with an alibi.

Two days later, Petitioner turned himself in to the police, but declined

to speak with the police.  Petitioner was convicted of second-degree murder

---

[1]       On July 1, 2005, the California Board of Parole Hearings replaced the
Board of Prison Terms.  Cal. Penal Code § 5075(a).

and possession of a firearm after two separate trials.

**B.     Board's Hearing and Decision**

At the October 2005 hearing, Petitioner related his version of the crime.  He told the Board that Garcia had the gun, Petitioner and Garcia struggled, and the gun went off.  Petitioner stated that Garcia was under the influence of heroin, that Petitioner was under the influence of cocaine, and that both had been drinking alcohol.  He stated that the car had made a sudden stop before the shooting and that he did not think it was possible that he pulled the trigger and shot Garcia.  Petitioner expressed the opinion that if he and everyone else in the car had not been ingesting alcohol and drugs, the incident never would have happened.  He stated that all of his criminal history could be related to drug and alcohol use.

In addition to considering Petitioner's statements and a summary of the crime, the Board considered Petitioner's criminal history, letters of support, post-release plans, behavior since the previous Board hearing, psychological evaluations, and a statement by the District Attorney's Office.

The Board determined that Petitioner was "not suitable for parole," "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison," and further stated:

-3-

the inmate needs therapy in order to face, discuss, understand and cope with the commitment offense and the cause of the factors of that (indiscernible) to commit the crime. The inmate's (indiscernible) are recent. He must demonstrate an ability to maintain these things over an extended period of time. And in view of the inmate's criminal history, lack of program participation, there's no indication that he would behave differently if paroled.

Finally, the Board found it was not reasonable to expect Petitioner would be suitable for parole release in the next three years.

**C.     Procedural History**

In May 2006, Petitioner filed a petition for writ of habeas corpus in the Contra Costa County Superior Court, claiming *inter alia* that the October 2005 Board decision violated his federal due process rights. The Superior Court denied the petition in a reasoned decision. Petitioner then filed habeas petitions with the California Court of Appeal and California Supreme Court. Both were summarily denied.

Petitioner filed the instant petition in September 2006, and on November 30, 2006, the Warden ("State") filed an answer. On December 14, 2006, Petitioner filed a traverse. On June 3, 2008, this court ordered the parties to show cause why the action should not be stayed pending the Ninth Circuit's en banc decision in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir.

2010) (en banc).  Petitioner filed an opposition to the stay on June 12, 2008,

and the State filed a response urging the Court to stay the decision.

The court stayed the case on February 10, 2009, pending the issuance

of the en banc decision in *Hayward*.[2]  The Ninth Circuit issued its decision

in *Hayward* on April 22, 2010.  On July 12, 2010, the State filed a

supplemental brief regarding *Hayward*'s effect on the case  The court now

lifts the stay and reaches the merits of Petitioner's due process challenge,

applying the standards set forth in *Hayward*.

## Discussion

An application for habeas relief by a person in state custody can be

granted only for violations of the Constitution or laws of the United States.

28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir.

1994); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing

*Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  Because the instant petition was

filed after the effective date of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), it is subject to the AEDPA's limitations

on federal habeas review.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27

---

[2]      On November 25, 2008, the case was reassigned to the
undersigned.

(1997).  Under the AEDPA, an application for habeas corpus will not be

granted unless the adjudication of the claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States" or

"resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State Court proceeding."

28 U.S.C. § 2254(d)(1) & (2).

Petitioner challenges the Board's decision on the grounds that (1) the

decision does not comply with California's "some evidence" rule, thereby

violating his federal due process rights; (2) the deferral of parole

consideration for three years violates the Ex Post Facto Clause; and (3) the

Board's parole suitability criteria violate state law.

## A.    Due Process Violation

Petitioner contends that his due process rights were violated because

the Board improperly found him unsuitable for parole based solely on his

commitment offense and pre-conviction conduct, in violation of the "some

evidence" rule.  The State contends that because the AEDPA limits federal

habeas relief to violations of clearly established federal law, federal habeas

review of Petitioner's contention that the State failed to comply with the

state-established "some evidence" rule is not available.

The Ninth Circuit has squarely rejected the State's contention.  *See Pirtle v. Cal. Bd. of Prison Terms*, 2010 WL 2732888, *4 (9th Cir. 2010); *Cooke v. Solis*, 606 F.3d 1206, 1214 (9th Cir. 2010); *Pearson v. Muntz*, 606 F.3d 606, 608 (9th Cir.2010) (per curiam); *Hayward*, 603 F.3d at 561-64. *Hayward* "establishes the law that governs [the] determination of post-AEDPA federal habeas claims in which a California prisoner asserts that he was denied parole in the absence of 'some evidence'; i.e., some evidence that he currently poses a threat to public safety."  *Pearson*, 606 F.3d at 608. Under *Hayward*, "courts must apply the California 'some evidence' test on federal habeas review under AEDPA."  *Id.* (citing *Hayward*, 603 F.3d at 562-63. )

The State correctly notes that *Hayward* states, "in the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else."  *Hayward*, 603 F.3d at 561.

However, "[i]t is beyond doubt that state statutes, and *a fortiori* state constitutions, 'may create liberty interests in parole release that are entitled to protection under the Due Process Clause.'" *Pearson*, 606 F.3d at 610-11

(quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)).  California's parole system, which guarantees that prisoners will not be denied parole absent some evidence of current dangerousness, creates a liberty interest in parole that the Ninth Circuit has held may be enforced under the Due Process Clause.  *See id.* at 611 ("Through its state statutory and constitutional law, California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." (citing *Hayward*, 603 F.3d at 561-63)).

Accordingly, as *Hayward* holds, "'courts in this circuit . . . [must] decide whether the California judicial decision approving the governor's [or the parole board's] decision rejecting parole was an unreasonable application of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"  *Id.* at 608 (quoting *Hayward*, 603 F.3d at 562-63) (alterations in *Pearson*).[3]

Because federal habeas review of Petitioner's challenge is available, we now turn, as *Hayward* instructs, to the merits of Petitioner's due process

---

[3]     Petitioner does not challenge the Superior Court's determination of the facts.  Accordingly, the court will address only the Superior Court's application of the California "some evidence" requirement.

challenge.

The last reasoned state court decision is by the Superior Court.  Under the look-through doctrine, federal courts treat the California Supreme Court's summary denial as resting on the same grounds as the Superior Court's decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 804-05 (1991) (holding that there is a presumption that a summary affirmance is based on the last reasoned decision).

The Superior Court decision approving the Board's decision was not an unreasonable application of California's "some evidence" requirement. Under California law, prisoners subject to indeterminate life sentences with the possibility of parole "become eligible for parole consideration after serving minimum terms of confinement."  *In re Dannenberg*, 104 P.3d 783, 791 (Cal. 2005).  The Board makes parole decisions in the manner set forth in Cal. Penal Code § 3041, and its implementing regulations.  *Id.*  The Board must consider both circumstances tending to show unsuitability[4] for

---

[4]    Circumstances tending to show unsuitability include: (1) the heinousness or cruelty of the commitment offense; (2) the prisoner's previous record of violence; (3) unstable social history in relationships with others; (4) sadistic sexual offenses; (5) psychological factors; and (6) serious misconduct while incarcerated.  Cal. Code Regs., tit. 15, §§ 2281(c) & 2402(c).

parole and circumstances tending to show suitability,[5] in order to determine

whether "the prisoner will pose an unreasonable risk of danger to society if

released from prison."  Cal. Code Regs., tit. 15, §§ 2281(a); 2402(a).

> As the *Hayward* court summarized:
>
> As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety."  There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety."  The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state," supports the inference of dangerousness.  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

*Hayward*, 603 F.3d at 562 (footnotes omitted) (quoting *In re Lawrence*, 190

P.3d 535, 539, 552, 554-55 (Cal. 2008)); *see also In re Rosenkrantz*, 59

---

[5]      Circumstances tending to show suitability include: (1) no juvenile record; (2) reasonably stable social history; (3) signs of remorse, such as performing acts or giving indications "that he understands the nature and magnitude of the offense;" (4) the crime was the result of significant personal stress; (5) battered woman syndrome; (6) lack of any significant history of violent crime; (7) the prisoner's present age as reducing the probability of recidivism; (8) realistic plans for the future upon release, or development of marketable skills usable upon release; and (8) institutional behavior that "indicate[s] an enhanced ability to function within the law upon release."  Cal. Code Regs., tit. 15, §§ 2402(d); 2281(d).

P.3d 174, 222 (Cal. 2002) (holding that when an unsuitability determination is based on the circumstances of the offense, the Board's decision must identify "some evidence" of aggravating facts beyond the minimum elements of that offense).

Although judicial review of an unsuitability determination is "extremely deferential," the purpose of the review is to ensure that the result was supported by "some evidence."  *Hayward*, 603 F.3d at 562; *see also In re Lawrence*, 190 P.3d at 568; *In re Shaputis*, 190 P.3d 573, 580 (Cal. 2008); *In re Rosenkrantz*, 59 P.3d at 220.

Here, the Board's determination was supported by "some evidence" of current dangerousness.  The Board properly considered the suitability and unsuitability factors set forth in California's statutory and regulatory framework.  *See* Cal. Code Regs. tit. 15, § 2402(c)&(d).  The Board then based its decision regarding Petitioner's level of dangerousness on several unsuitability factors in addition to the commitment offense.

Petitioner is correct that the Board included "frozen" factors in its analysis.  The Board noted that Petitioner's commitment offense "was carried out in an especially cruel and callous manner," that Petitioner later tried to bribe Cloud into providing a false alibi, and that Petitioner's motive

-11-

was inexplicable or very trivial in relation to the offense.  The Board also

noted that Petitioner's pre-conviction record contained violent and criminal

behavior, including convictions for attempted murder, driving under the

influence, possession of narcotics, and possession of a firearm.

However, the Board also considered Petitioner's behavior in prison,

noting his failure to take educational or vocational courses.  The Board also

stated that Petitioner's August 2005 psychological report was

"inconclusive" in that it indicated Petitioner had "made gains" but lacked

sufficient detail to "support how these gains were attained."  The Board

compared the report to Petitioner's more negative 1999 psychological report

and indicated that more time was necessary to observe Petitioner's progress.

Finally, with respect to Petitioner's post-release plans, the Board noted that

he had living arrangements in Los Angeles, but that his employment plans

were in Manteca, California.   The Board's parole denial, which was based

both on his commitment offense and other pre- and post-conviction factors,

was therefore supported by "some evidence" of current dangerousness.  *See*

*Hayward*, 603 F.3d at 563 (holding that the state court reasonably found

that petitioner's commitment offense, coupled with psychological reports

stating that he would pose a low to moderate risk if released, constituted

"some evidence" of his future dangerousness).

Accordingly, the court concludes that the state court decision approving the Board's denial of parole was not an unreasonable application of the California "some evidence" requirement, nor was it "based on an unreasonable determination of the facts in light of the evidence." *See Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)). Petitioner is therefore not entitled to habeas relief on the grounds that his due process rights were violated.

**B.     Ex Post Facto Violation**

Relying on *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499 (1995), Petitioner contends that the Board's three-year deferral of parole consideration is unconstitutional under the Ex Post Facto Clause, U.S. Const. art. I, § 10.[6]

At the time Petitioner was convicted, Cal. Penal Code § 3041.5(b)(2) provided for annual parole hearings, except that the Board could schedule the hearing

---

[6]     Petitioner also contends that the three-year deferral was not properly applied to him because he has not been convicted of multiple murders.  This, however, is a state law question and this court does not have the authority to review state court determinations of state law questions.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

no later than (A) two years after any hearing at which parole is denied if the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following year and states the bases for the finding or, (B) three years after any hearing at which parole is denied if the prisoner has been convicted, in the same or different proceedings, of more than one offense which involves the taking of a life, and the board finds that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding.

*In re Brown*, 118 Cal. Rptr. 2d 156, 158 (Ct. App. 2002) (citing Cal. Stats. 1986, ch. 248, § 166, pp. 1267-68).  At the time the Board deferred Petitioner's parole determination for three years, § 3041.5 had been amended to provide for parole hearing deferrals of up to five years "if the petitioner has been convicted of murder."  *See id.*

The three-year deferral the Board entered pursuant to the then-applicable § 3041.5 does not violate the Ex Post Facto Clause.  The Ex Post Facto Clause prohibits "laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"  *Morales*, 514 U.S. at 504-05 (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)).  In *Morales*, the Supreme Court held that California's 1981 amendment to its parole procedures to allow the Board to decrease the frequency of parole suitability hearings under certain circumstances did not violate the Ex Post Facto

-14-

Clause. *Id.* at 501-02. The Court reasoned that "[r]ather than changing the sentencing range applicable to covered crimes," the amendment "simply 'alters the method to be followed' in fixing a parole release date under identical substantive standards." 514 U.S. at 507-08 (citing *Miller v. Florida*, 482 U.S. 423, 433 (1987)). Like the 1981 amendment addressed in *Morales*, the 1994 amendment under which Petitioner's parole suitability hearing was deferred does not violate the Ex Post Facto Clause because it alters only the administrative method by which a parole release date is offered. Accordingly, Petitioner is not entitled to habeas relief under the Ex Post Facto Clause.

## C.    State Law Violations

Finally, Petitioner's contention that the Board's parole suitability criteria violate state law presents no basis for federal habeas review because it presents only state law questions. *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). To the extent that the Board's compliance with state law is relevant to Petitioner's federal due

-15-

process challenge, it has been discussed in Part A, above.

## Conclusion

For the reasons set forth above, the court determines that the petition fails to state a viable claim for relief under federal law. Accordingly, the petition for writ of habeas corpus is **DISMISSED.**

Dated: August 31, 2010.

/s/   *A. Wallace Tashima*
A. WALLACE TASHIMA
United States Circuit Judge
Sitting by Designation